# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DERRICK CANADY, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 07 C 5028 ) |
| CORRECTIONAL OFFICER DAVIS, SHERIFF THOMAS DART, and COUNTY OF COOK, | ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Derrick Canady has sued Correctional Officer Derrick Davis, Cook County Sheriff Thomas Dart, and the County of Cook asserting a claim of excessive force and unreasonable search and seizure under 42 U.S.C. § 1983. The defendants have moved for summary judgment due to Canady's alleged failure to exhaust administrative remedies as required by the Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e(a). For the following reasons, the Court grants defendants' motions.

## Background

On a motion for summary judgment, the Court draws "all reasonable inferences from undisputed facts in favor of the nonmoving party and [views] the disputed evidence in the light most favorable to the nonmoving party." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008).

On September 7, 2005, while awaiting trial, Canady was detained in Division 11

of the Cook County Jail. Officer Davis was locking down the tier in which Canady was housed, when several inmates got out of their cells. As the inmates ran from cell to cell, Davis eventually confronted Canady. The two men argued for a while, and Davis then entered Canady's cell. Canady testified that he tried to end the confrontation at that point. He claims, however, that Davis struck him on the side of the face and then punched and stomped his head and body repeatedly. After several minutes, when Canady was close to unconsciousness, Davis took Canady off the tier and had him sent to Cook County Hospital. Canady suffered a broken jaw and several cuts requiring stitches.

After he was released from the hospital, Canady was transferred to Division 8 of the Jail. He testified that he may have appeared in front of a committee to speak about the altercation with Davis, but he could not remember. He spoke with someone from Internal Affairs while at the hospital or at Division 8, but he did not file a formal grievance. Canady testified that he knew where to get a grievance form and how to file one but that he thought it would be useless to do so.

The Cook County Department of Corrections (DOC) initiated an investigation into Davis's behavior during the incident. The investigation concluded that Davis had used "unwarranted physical force on Detainee Derrick Canady." Davis Reply Ex. 1. DOC subsequently terminated Davis's employment.

**Discussion**

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Bilthouse v. United States*, 553 F.3d 513, 514-15 (7th Cir. 2009).

2

At issue is whether Canady exhausted his administrative remedies before filing suit under section 1983. The PLRA provides that "no action shall be brought with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). All inmate suits concerning prison conditions are subject to the exhaustion requirement. *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The Seventh Circuit "has taken a strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). This means that "[a] prisoner must properly use the prison's grievance process." *Id.* "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This is so even if the administrative remedies that the prison makes available cannot provide the kind of relief the inmate seeks. *Booth v. Churner*, 532 U.S. 731, 734-35 (2001). Because exhaustion is an affirmative defense, the burden of proof lies with the defendants. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004).

Defendants contend that Canady failed to file a formal grievance under General Order (G.O.) 14.5 and that the PLRA requires him to use all available remedies before he can be considered to have exhausted administrative remedies. Canady contends that DOC offers two different avenues—G.O. 14.5 and G.O. 4.1—for the pursuit of administrative remedies and that he exhausted his remedies via G.O. 4.1.

G.O. 14.5, entitled "Detainee Grievance Procedure," outlines the process for formal grievances by detainees concerning "institutional matters." Mot. Ex. 4 at 1. The

3

stated purpose of G.O. 14.5 "is to establish a written policy and procedure that describes the grievance procedure that is available to all [DOC] detainees." *Id.* Grievances may be processed for a variety of reasons, including "alleged violations of civil, constitutional or statutory rights." *Id.* A detainee may file a grievance by placing a completed Inmate Grievance Form—which is available to detainees regardless of disciplinary status—in a designated box within fifteen days of the date that the event occurred. G.O. 14.5 provides that grievances should be resolved by the Correctional Rehabilitation Worker assigned to a particular division or forwarded to the Program Services Administrator if the grievance involves complex or difficult issues. Once the grievance is resolved, the detainee is notified of the decision. A detainee may appeal a grievance decision to the Administrator of Program Services within five days of receiving notification.

G.O. 4.1 is entitled "Internal Investigations." Resp. Ex. 1 at 1. It provides DOC's "written policy and procedure in the handling of complaints, investigations and disciplinary actions against member of the department." *Id.* The regulation defines two types of misconduct: serious and less serious. Serious misconduct is defined as behavior that endangers the safety of the staff or inmates or the security of the institution; it includes negligence leading to an escape, willful destruction of property, sleeping on duty, and inmate abuse. Less serious misconduct is defined as behavior that violates DOC rules but does not pose risks to safety and security. G.O. 4.1 provides that complaints of misconduct may be initiated in one of four ways. These include reports of misconduct—either orally or in writing—made to supervising commanding officers by citizens or inmates, reports made to the Internal Investigation

4

Division by citizens or inmates, incidents observed by supervising commanding officers, or initiated by the Sheriff and the Executive Director at their discretion. *Id.* at 4. A complaint of serious misconduct must be reported to the Internal Investigations Division, even if the complaint is believed to be unfounded. In such a case, the Internal Investigations Division makes an independent investigation of the complaint. Once the investigation is complete, the Chief Investigator of the Internal Investigations Division sends written findings and recommendations concerning the accused DOC member to the Executive Director and a Hearing Board. The Hearing Board considers the findings and recommendations of the Internal Investigations Division. After giving the accused employee the opportunity to present evidence in his own behalf, the Hearing Board makes a determination about the evidence. The Hearing Board may decide that the charges are sustained or not sustained or that the evidence is insufficient to make a determination. If the charges are sustained, the Sheriff then may make the decision to terminate the employment of the accused employee. G.O. 4.1 provides details about confidentiality requirements, how investigations must proceed, and how the accused employee's rights are protected if it appears that criminal charges may be filed.

Canady contends that G.O. 4.1 is an alternative grievance procedure, compliance with which satisfies the PLRA's exhaustion requirement. He contends that he satisfied this procedure, and thus the PLRA, via his dealings with DOC Internal Affairs personnel. The only case that Canady cites to support his contention is *Ali v. Sheahan*, No. 00 C 1227, 2003 U.S. Dist. LEXIS 18881 (N.D. Ill. Oct. 23, 2003). In that case, an inmate was allegedly beaten at the Cook County Jail during an evacuation. *Id.* at *2. The inmate's father called DOC and lodged a complaint with the DOC's director.

5

*Id.* The DOC then investigated the incident. *Id.* The court concluded that G.O. 4.1 offered an alternative grievance procedure for complaints concerning members of the DOC. *Id.* at *8-*9. The court considered whether the PLRA required a prisoner to exhaust any and all remedies rather than choose among legitimate alternatives. Although the PLRA requires that plaintiffs exhaust "such administrative remedies as are available," the court concluded that the PLRA permits prisoners to "pursue one legitimate administrative remedy instead of another." *Id.* at *8.

In support of this conclusion, the court cited two Third Circuit decisions and two district court decisions from New York. *Id.* at *7. Each of those cases, however, involved situations in which flaws in prison procedures or actions by prison staff hindered the detainee from following the supposedly prescribed grievance procedure. *See Concepcion v. Morton*, 306 F.3d 1347, 1350-51 (3d Cir. 2002) (finding that inmate's compliance with the grievance procedure as set forth in an inmate handbook was sufficient to establish exhaustion even though that procedure had not been officially adopted by the agency); *Camp v. Brennan*, 219 F.3d 279, 280-81 (3d Cir. 2000) (finding that inmate's grievance submitted to the Office of Professional Responsibility was sufficient to establish exhaustion when he was prevented from filing an official grievance by prison personnel); *O'Connor v. Featherson*, No. 01 CV 3251, 2003 WL 554752, at *3 (S.D.N.Y. Feb. 27, 2003) (finding exhaustion where prisoner pursued alternative administrative remedy recommended by prison superintendent). That was precisely the situation presented by *Ali*: a prison official told the inmate's father to complain to the DOC director, not to file an inmate grievance. *Ali*, 2003 U.S. Dist. LEXIS 18881, at *2.

Canady has made no such allegation. Rather, his deposition testimony reveals

6

that he knew about the grievance procedure and how to initiate a grievance but decided not to file one because he thought it would be useless. Mot. Ex. 2 at 53-54, 120. Specifically, Canady admitted that he knew where to find grievance forms and how to submit them for review. He did not submit one because "I don't believe in grievance anyway. Don't nothing happen." *Id.* at 120.[1] Instead, Canady "just wanted a lawsuit on it." *Id.* at 121. Canady did not testify, nor does he contend in his response, that any prison official suggested that he lodge a complaint via G.O. 4.1 rather than file a grievance under G.O. 14.5. Moreover, although Canady contends at one point in his brief that he "complained to Defendant Davis's supervisors," Resp. at 1, he did not so testify during his deposition. Rather, Canady testified that officers from Internal Affairs visited him in Division 8 to ask about the incident. He also acknowledged that he made no complaints to prison officials because he decided he wanted to file a lawsuit instead. In short, even assuming that Canady lodged some kind of complaint, it is clear that he did not comply with DOC's established grievance procedure, even though he was aware of the procedure and was not hindered in any way from utilizing it.

In any event, G.O. 4.1 is not an alternative grievance procedure. Rather, it is the procedure for initiating and pursuing internal investigations of DOC employee misconduct. Although misconduct that could be investigated under G.O. 4.1 might also be the subject of an inmate grievance, that is where the similarities between the two procedures end. G.O. 14.5 is centered on inmate rights and responsibilities with respect to grievances. It mandates that inmates be notified of the progress of their

---

[1] A claim that a particular internal remedy would be futile does not excuse failure to exhaust all available remedies. *Thornton v. Snyder*, 428 F.3d 690, 696 (7th Cir. 2005) (citing *Booth*, 532 U.S. 731).

grievance. It also provides for an appeals process if the inmate does not agree with the outcome. By contrast, G.O. 4.1 focuses on DOC members accused of misconduct. It provides for the procedure through which misconduct is investigated and allows for the accused member to present a defense to those charges. There is no mechanism for an appeal or challenge by a complaining inmate or citizen or even for notifying the aggrieved inmate of the investigation's results. And the only possible outcomes in a G.O. 4.1 investigation are member discipline, exoneration, or dismissal of the charges. All of these are focused on the DOC member, not the complaining party.

It is possible that had Canady followed the prescribed grievance procedure, the outcome could have been the same as the ultimate result of the Internal Affairs investigation, namely, Davis's dismissal. This does not affect the outcome of this case; as the Court has noted, the Seventh Circuit has taken a strict compliance approach to exhaustion under the PLRA. In addition, the Seventh Circuit has confronted a factual situation similar to the one in this case. In *McCoy v. Gilbert*, 270 F.3d 503 (7th Cir. 2002), the plaintiff suffered injuries at the hand of prison officers, who were later cited for misconduct after a Bureau of Prisons investigation. Although the plaintiff complained to the staff in his housing unit and cooperated with the investigation, he did not file a grievance. *Id.* at 507-08. Using the less-stringent pre-PLRA standard,[2] the court held that the plaintiff's informal conversations with prison investigators were insufficient to show exhaustion because there was no evidence that the investigation was initiated as a result of the plaintiff's statements. *Id.* at 512. Rather, the "investigation was launched

---

[2] The court determined that because the complained-of events occurred before the enactment of the PLRA, the plaintiff could "show exhaustion by demonstrating that he substantially complied with the institution's grievance policy." *Id.* at 512.

independently of [the plaintiff's] casual discussions, and it was calculated to effectuate reform on an institutional level, not to identify and respond to the particular grievances harbored by individual inmates." *Id.* Canady's deposition testimony reveals that his case is analogous; he only spoke with Internal Affairs once the investigators came to him. In addition, although he cooperated with the investigation, Canady consciously chose to forego the grievance procedure in favor of this lawsuit. That is precisely what the PLRA seeks to prevent. *See Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006) (stating that PLRA exhaustion requirement gives "the prison grievance system . . . a fair opportunity to consider the grievance").

Although the court in *Ali* stated that G.O. 4.1 established an alternative grievance procedure under the circumstances of that case, the same is not true here. For this reason, and because Canady deliberately bypassed the grievance process, he failed to properly exhaust available administrative remedies as required under the PLRA.

## Conclusion

For these reasons, the Court grants defendants' motions for summary judgment [docket nos. 56 & 59]. The Clerk is directed to enter judgment in favor of defendants.

                                             _____/s Matthew F. Kennelly_____
                                                    MATTHEW F. KENNELLY
                                                   United States District Judge

Date: April 29, 2009